JOSEPH MANISCALCO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Maniscalco v. Commissioner
Docket No. 492-77.
United States Tax Court
T.C. Memo 1978-274; 1978 Tax Ct. Memo LEXIS 241; 37 T.C.M. (CCH) 1174; T.C.M. (RIA) 78274; July 24, 1978, Filed John M. Rickel, for the petitioner. James R. Rich, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency of $ 288.22 in petitioner's 1974 Federal income tax. Concessions having been made by petitioner in respect of certain adjustments, the issues remaining for decision are: 1. Whether petitioner, a professional artist, is entitled under section 162(a)[1]/ to an advertising and public relations *243 business expense deduction in the amount of $ 1,100, which allegedly was the fair market value of three of his paintings which he donated to charitable organizations. 2. Whether petitioner is entitled under section 170 to charitable deductions of $ 600 for each of three portraits which he painted and donated to qualifying charitable organizations. FINDINGS OF FACT Petitioner Joseph Maniscalco (hereinafter petitioner) was a legal resident of Bloomfield Hills, Michigan, when he filed his petition. In his Federal income tax return and his amended income tax return for 1974, he used the cash method of accounting. During 1974, petitioner was a professional artist. On his Federal income tax return for that year, he claimed an advertising and public relations business expense deduction in the amount of $ 1,214. He attributed $ 1,100 of that amount to the value of three of his plaintings which he donated, apparently, to charitable organizations. On his 1974 income tax return or his returns for prior years, petitioner deducted as a *244 business expense the costs of the materials used to produce the paintings. In 1974, petitioner painted three portraits and gave one portrait each to the Northwood Institute, the Scarab Club of Detroit, and the Grosse Pointe Symphony. These organizations were exempt from Federal income tax under section 501(c)(3). On his 1974 Federal income tax return, petitioner claimed charitable contribution deductions of $ 600 for each of the three portraits, or a total of $ 1,800. Petitioner deducted the costs of the materials that he used to produce the paintings on his 1974 Federal income tax return or his returns for prior years. Respondent determined that petitioner was not entitled to a deduction for either the alleged $ 1,100 advertising and public relations business expense or the claimed $ 1,800 charitable contribution. OPINION The Internal Revenue Code provides no ground for allowing either the alleged business expense deduction or the charitable deduction petitioner claims. As to the former, section 162(a) allows a deduction of all the ordinary and necessary expenses "paid or incurred" *245 during the taxable year in carrying on a trade or business. Whatever may be said in behalf of taking into account the value of one's own services in lieu of paid labor, such services are not considered an element of the deduction under section 162(a), just as the flow of satisfaction from services arising from one's own labor is not includible in his gross income. Cf. Hutcheson v. Commissioner,17 T.C. 14, 19 (1951). Petitioner produced the contributed paintings through his own labor. He did not realize taxable income when he completed them. Nor did his labor in doing the paintings constitute the payment of a deductible business expense. We find no ground for holding that section 162(a) permits the coveted business expense deduction. As to the claimed contributions, the Tax Reform Act of 1969 amended section 170(e) to read partially as follows: (e) Certain Contributions of Ordinary Income and Capital Gain Property.-- (1) General rule.--The amount of any charitable contribution of property otherwise taken into account under this section shall be reduced by the *246 sum of-- (A) The amount of gain which would not have been long-term capital gain if the property contributed had been sold by the taxpayer at its fair market value (determined at the time of such contribution), * * * * * *
Included in the class of property subject to this provision are works "of art created by the donor." Section 1.170A-4(b)(1), Income Tax Regs.
Petitioner recognizes that section 170(e)(1)(A) and the cited regulation deny the deduction. He maintains, however, that the section and the regulation are unconstitutional, particularly when considered in conjunction with the carryover-basis-at-death rules in section 1023(a)(1)[2]/ which were added by the Tax Reform Act of 1976. He points out that the estate tax payable on the inclusion of a work of art in the decedent's gross estate for estate tax purposes coupled with the income tax payable on the gain on the sale by the estate or a beneficiary, computed by reference to the carryover basis, may result in a total tax in excess of the art object's value. *247 While petitioner may be correct that, in a given case, the combined estate tax and income tax on the sale of a deceased artist's works of art may exceed their value, that possibility is not involved in this case. The issue here is the allowability of a deduction, and deductions are matters of legislative grace. Interstate Transit Lines v. Commissioner,319 U.S. 590, 593 (1943); New Colonial Co. v. Helvering,292 U.S. 435, 440 (1934). The taxpayer must be able to point to a particular statute and show that he comes within its terms. Deputy v. DuPont,308 U.S. 488, 493 (1940); White v. United States,305 U.S. 281, 292 (1938). And petitioner cannot do that. Since Congress could deny any deduction whatever for charitable contributions, we think it clear that Congress can limit a taxpayer's allowable charitable deduction for property to the amount of the taxpayer's financial outlay in creating such property. Nor do we find section 170(e)(1)(A) constitutionally infirm on the ground that it discriminates against artists. The section's limitations on deductions are not restricted to artists. *248 The section reduces the charitable contribution allowance for the value of any contributed property by the amount of the gain that would not have been long-term capital gain if the contributed property had been sold at its fair market value. As examples, section 170A-4(b)(1), Income Tax Regs., lists "property held by the donor primarily for sale to customers in the ordinary course of his trade or business, * * * a manuscript prepared by the donor, letters and memorandums prepared by or for the donor, a capital asset held by the donor for not more than 6 months, and stock described in section 306(a), 341(a), or 1248(a) to the extent that, after applying such section, gain on its disposition would not have been long-term capital gain," as well as "a work of art created by the donor." We do not think this classification is unreasonable or discriminatory. Cf. Shapiro v. Thompson,394 U.S. 618, 642 (1969); Tanenbaum v. Commissioner,58 T.C. 1, 9 (n. 4) (1972). Petitioner makes an eloquent plea on behalf of his fellow artists who, he feels, are being asked to carry an unfair tax burden, but he addresses *249 his plea to the wrong forum. This Court does not write the tax laws. It merely applies the laws as written by the Congress. While it is true that the Court will, and should, examine the constitutionality of such laws, we do not think Congress exceeded its constitutional authority to prescribe the rules for applying the income tax in adopting section 170(e)(1)(A). To reflect the foregoing, Decision will be entered for the respondent.
Footnotes
1. /↩ All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.
2. /SEC. 1023. CARRYOVER BASIS FOR CERTAIN PROPERTY ACQUIRED FROM A DECEDENT DYING AFTER DECEMBER 31, 1976. (a) General Rule.-- (1) Carryover basis.--Except as otherwise provided in this section, the basis of carryover basis property acquired from a decedent dying after December 31, 1976, in the hands of the person so acquiring it shall be the adjusted basis of the property immediately before the death of the decedent, further adjusted as provided in this section.↩