T.C. Memo. 1997-72


UNITED STATES TAX COURT


BRUCE K. REMY AND GAIL E. REMY, Petitioners $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 7266-94.          Filed February 10, 1997.


Bruce K. Remy, pro se.

William F. Castor, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

WHALEN, Judge:  Respondent determined the following deficiencies in, and penalties on, petitioners' income taxes:

| Year | Deficiency | Penalty Sec. 6662 |
|------|-----------|-------------------|
| 1990 | $470 | $270 |
| 1991 | 4,345 | 1,114 |
| 1992 | 5,320 | 1,428 |

All section references are to the Internal Revenue Code, as in effect during the years in issue.  We are called upon to decide three questions:  First, whether petitioners can deduct the value of certain uncompensated medical services that Dr. Remy provided to his patients, as an advertising expense under section 162; second, whether the subject tax deficiencies should be disallowed on the ground that the original revenue agent's report contained "gross errors of fact"; third, whether petitioners are liable for the accuracy-related penalty under section 6662(a).

FINDINGS OF FACT

Some of the facts have been stipulated by the parties. The stipulation of facts, the supplemental stipulation of facts, and the exhibits attached thereto are hereby incorporated in this opinion.  At the time the subject petition was filed in this Court, petitioners resided in the State of Oklahoma.  In this opinion, references to petitioner are references to Dr. Bruce K. Remy.

Petitioner is a medical doctor. During the years in issue, he operated an ambulatory care medical clinic in Norman, Oklahoma. As part of his practice, petitioner consulted with his patients by telephone. From time to time, he also telephoned pharmacies to authorize the refilling of prescriptions on behalf of patients who requested him to do so.

Typically, petitioner did not charge his patients and received no cash or other compensation for these telephone services. If petitioner felt that a patient was abusing this free service, he would either refuse to provide the service to the patient, or provide the service but ask the patient to come to his office for an appointment.

Beginning on September 25, 1991, petitioner kept a log of his telephone consultations with patients. Each entry in the log consisted of the name of the patient, the date of the call, and a brief description of the nature of the call. For the period September 25, 1991, through the end of 1991, there were approximately 190 entries in the log. For tax year 1992, there were approximately 860 entries in the log.

During the years in issue, petitioners reported income for Federal income tax purposes on the basis of the cash receipts and disbursements method of accounting. Attached

to each of petitioners' joint income tax returns for 1990, 1991, and 1992 is a Schedule C, Profit or Loss From Business, designated "Ambulatory Medical Clinic". On each Schedule C, petitioners claimed a deduction for advertising expenses which included the telephone services described above. The advertising deductions claimed on their Schedules C, and the portion of each deduction attributed to petitioner's telephone services are as follows:

| Tax Year | Advertising Deduction | Portion for Telephone Services |
|------|------------|--------------------|
| 1990 | $6,448 | $3,328 |
| 1991 | 16,535 | 15,600 |
| 1992 | 18,141 | 17,169 |
| | 41,124 | 36,097 |

The deductions claimed for telephone services did not involve an outlay of cash or property by petitioners, but are based upon the value Dr. Remy ascribed to the professional services for which he was not compensated. Petitioner computed the value of the telephone services deducted in 1990 by estimating the number of telephone calls he received during the year, and multiplying that number by $15, a minimum charge for his medical services. Petitioner computed the value of the telephone services deducted in 1991 by estimating the number of calls he

received before September 25, 1991, and adding the number of entries in his journal for the period after September 24, 1991. He then multiplied that sum by $15, a minimum charge for his medical services. Petitioner computed the value of the telephone services deducted in 1992 by multiplying the number of entries in his log by $20, a minimum charge for his medical services. Petitioner did not include in gross income the value of the uncompensated medical services deducted on his returns for 1990, 1991, or 1992.

Following his audit of petitioners' income tax returns for 1990, 1991, and 1992, respondent's revenue agent proposed adjustments to the deductions claimed by petitioners for advertising expenses, bad debts, and rent expense. The agent mailed a copy of his preliminary report to petitioners. In a section of the revenue agent's report dealing with the adjustments to petitioners' advertising deductions, the report states as follows:

> FACTS:The [sic] taxpayer is a medical doctor that runs an ambulatory (Walk-in) medical clinic. The taxpayer is the only doctor in the clinic. The taxpayer reports his income on Schedule C of his Form 1040. The taxpayer uses the cash method of accounting. Under the cash method of accounting, the income is reported when received and the expenses deducted when paid. It was discovered that most of the deduction that the taxpayer had for advertising was what the taxpayer called

"goodwill" advertising.  The taxpayer stated that he did not always charge when patients called in for a consultations [sic] on the phone or when patients called him to have prescriptions refilled.  The taxpayer has stated that the normal charge for this type of service is $15 to $20.  The taxpayer had kept a log of calls that he received and he deducted for these calls as goodwill advertising.

LAW:Internal [sic] Revenue Code Section 162 states that there shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business.

In Von [sic] Iderstine Co., 16 TCM 790, Dec. 22,578(M) the court stated that no evidence to show any publicity for the petitioner resulted from making payment or that any goodwill was engendered.

Taxpayer's Position:The [sic] taxpayer's position is that the services that he provided has a value.  The taxpayer states that cash does not have to change hands if the services provided has [sic] a clear monetary value.  The taxpayer, therefore, thinks it is reasonable to consider the services having a cash value and being deductible as an advertising expense.

Conclusion:Based [sic] upon the facts and law stated above, the taxpayer is not entitled to the claimed deduction.  The taxpayer is on the cash method of accounting.  No income has ever been reported for the claimed deduction.  In addition, the taxpayer has not proved that any goodwill was engendered.  Items are not deductible under IRC 162.

Approximately 6 months later, respondent mailed to petitioners the notice of deficiency that is at issue in this proceeding.  In the notice of deficiency, respondent

determined tax deficiencies and penalties with respect to the adjustment of petitioners' deductions for advertising, bad debts, and rent expense.  The following explanation of respondent's adjustment to petitioners' advertising expense is provided in the notice:

> The deductions of $6,448.00, $16,535.00 and $18,141.00 shown on your 1990, 1991 and 1992 returns, respectively, as Schedule C advertising expense are reduced by $3,329.00, $15,600.00 and $17,169.00, respectively, because it has not been established that any amounts more than $3,119.00, $935.00 and $972.00, respectively, were for ordinary and necessary business expenses, or were expended for the purpose designated.  Therefore, your taxable income is increased $3,328.00, $15,600.00 and $17,169.00, respectively.

Prior to issuance of the notice of deficiency, petitioners conceded liability for the portion of the proposed deficiencies attributable to the bad debts and rent expense adjustments.  Petitioners did not concede liability for the accuracy-related penalty under section 6662 with respect to any of the adjustments.

Although he is highly educated, petitioner has had no formal training in tax law.  Since at least 1990, petitioner has researched income tax issues by reading the Internal Revenue Code, accompanying regulations, case law, and other tax materials such as tax guides.  Although petitioner has never sought formal advice from lawyers,

accountants, or other tax professionals, he did "informally" seek the advice of professionals with whom he was acquainted.

## OPINION

### Advertising Expenses

The principal issue in this case is whether petitioners are entitled to deduct, as an advertising expense under section 162, the value of the uncompensated medical services Dr. Remy provided to his patients during the years in issue. Section 162 allows an individual to deduct all ordinary and necessary expenses paid or incurred during the taxable year in carrying on a trade or business. Sec. 162(a). Respondent does not question petitioners' method of valuing Dr. Remy's telephone services, and does not seriously question the relationship of those services to Dr. Remy's trade or business. Respondent asserts that the deductions are not allowable because the amounts that petitioners seek to deduct are not expenditures that petitioners, cash basis taxpayers, "paid" during any of the years in issue, as required by section 162(a). We agree with respondent.

We start with the principle that deductions are a matter of legislative grace and are to be narrowly construed. See, e.g., Commissioner v. Jacobson, 336 U.S.

28, 49 (1949). Petitioners bear the burden of proving that they are entitled to the deductions at issue. Rule 142(a), Tax Court Rules of Practice and Procedure; New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934).

Section 162(a) provides in part as follows:

> SEC. 162(a). In General.--There shall be allowed as a deduction all the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business * * *

Generally, a cash basis taxpayer is not entitled to deduct a trade or business expense under section 162(a) unless the taxpayer has paid the expense during the taxable year. Secs. 1.446-1(c)(1)(i), 1.461-1(a)(1), Income Tax Regs; e.g., Magnon v. Commissioner, 73 T.C. 980, 1001-1002 (1980). This applies to all trade or business expenses, including advertising expenses. E.g., Leone v. Commissioner, T.C. Memo. 1993-51; Madden v. Commissioner, T.C. Memo. 1989-162.

The value of labor performed by a taxpayer does not constitute an amount "paid or incurred", and, for that reason, a cash basis taxpayer is not entitled to deduct the value of his or her own labor as a business expense under section 162(a). Maniscalco v. Commissioner, 632 F.2d 6, 7-8 (6th Cir. 1980), affg. T.C. Memo. 1978-274; Grant v.

<u>Commissioner</u>, 84 T.C. 809, 819-820 (1985), affd. without published opinion 800 F.2d 260 (4th Cir. 1986); <u>Rink v. Commissioner</u>, 51 T.C. 746, 753 (1969); <u>Fisher v. Commissioner</u>, T.C. Memo. 1986-141; cf. <u>Hutcheson v. Commissioner</u>, 17 T.C. 14, 19 (1951); <u>Walter v. Commissioner</u>, T.C. Memo. 1979-132; <u>Jeppsen v. Commissioner</u>, T.C. Memo. 1978-343; <u>Bers v. Commissioner</u>, T.C. Memo. 1976-263; <u>Butrick v. Commissioner</u>, T.C. Memo. 1972-59; <u>Escofil v. Commissioner</u>, T.C. Memo. 1971-131, affd. 464 F.2d 358 (3d Cir. 1972). To hold otherwise would be to allow a business deduction for unpaid compensation which was never reported as income. See <u>Hutcheson v. Commissioner</u>, <u>supra</u> at 19; see also <u>Stengel v. Commissioner</u>, T.C. Memo. 1992-570, affd. without published opinion 996 F.2d 1227 (9th Cir. 1993), in which the Court stated:

> The law is clear regarding a failure to realize anticipated future income. Such failure is not a loss contemplated by section 165. As the Supreme Court succinctly stated in <u>Hort v. Commissioner</u>, 313 U.S. 28, 32-33 (1941), "Nothing in section 23(e) [currently at section 165] indicates that Congress intended to allow petitioner to reduce ordinary income actually received and reported by the amount of income he failed to realize." * * *

The same is true of section 162.

Petitioners note that section 162 "does not define what constitutes an expense", and argue that the term "expense" should be "the converse of income". Petitioners further note that under section 61 gross income means all income "whether received in the form of money, property, or services." Therefore, according to petitioners, a deductible expense should include any expenditure made "in the form of money, property, or services."

Petitioners support their contention that the value of services is deductible under section 162 by noting that under section 132, an employee is not entitled to exclude from gross income a fringe benefit consisting of a service provided by his or her employer unless the fringe benefit qualifies as a "no-additional-cost service", as defined by section 132(b). Petitioners reason that the employee could not receive income in the form of services "unless the employer is incurring an equal expense in the form of the services * * * rendered to the employee".

Petitioners attempt to further support their contention that the value of services is deductible under section 162 by noting that section 162(a)(1) allows the deduction of "a reasonable allowance for salaries or other compensation for personal services actually rendered". Petitioners argue that "the term 'other compensation'

appears to include non-cash expenditures for fringe benefits in the form of goods or services."  In support of this assertion, petitioners cite Wright v. Commissioner, T.C. Memo. 1992-60, in which the Court permitted the operator of a barter exchange to deduct under section 162(a) the value of "trade units", the medium of exchange for transactions between members of the barter exchange, that the taxpayer repaid to the exchange to correct deficits created by other members.  Petitioners also cite Sullivan v. Commissioner, T.C. Memo. 1982-150, in which the Court allowed a service station operator to deduct the cost of beer that he offered to his customers free of charge while their vehicles were being filled with gasoline or serviced.  Finally, petitioners cite Newark Morning Ledger Co. v. United States, 507 U.S. 546 (1993), which petitioners argue establishes "an important conceptual landmark which, in this instance, would allow a basis for the valuation and favorable tax treatment of legitimate services provided by a business owner for the benefit of his customers to engender good will, under the advertising expenses expressly allowable under Reg. section 1.162-1."

Petitioners fail to perceive that section 162 limits the expenses that a cash basis taxpayer can deduct to those which are "paid" during the year.  Petitioners also fail to

perceive that, in rendering professional services, Dr. Remy has not "paid" an expense for purposes of section 162. As we noted in Rink v. Commissioner, supra at 753:

> Just as "imputed income" arising from the bene-
> fit a taxpayer's own services yield to him is
> not taxable under our system of taxation,
> neither is the "imputed expense" arising out
> of his exertions a proper deduction from income.
> Labor performed by a taxpayer does not constitute
> an amount "paid or incurred" by him, and conse-
> quently, cannot be deducted by him under section
> 162 * * *. [Citations omitted.]

None of the cases cited by petitioners holds to the contrary. In two of the cases, the expenditures that were held to qualify as business expenses under section 162 consisted of cash or property and did not involve unpaid services provided by the taxpayer. In Wright v. Commissioner, supra the taxpayer was permitted to deduct the value of "trade units" that he had repaid to the exchange. In Sullivan v. Commissioner, supra the taxpayer was permitted to deduct the cost of the beer he gave to his customers. In the instant case, on the other hand, petitioner made no expenditure of cash or property and, thus, no expenditure for which a business deduction is allowable under section 162.

The third case cited by petitioners, Newark Morning Ledger Co. v. United States, supra, does not involve a

deduction of the value of services rendered by a cash basis taxpayer. In that case, the Supreme Court held that a newspaper publisher had proven that a list of "paid subscribers" constituted an intangible asset with an ascertainable value and a limited useful life, the duration of which could be ascertained with reasonable accuracy, and, thus, qualified for the depreciation allowance under section 167. The case does not support petitioner's assertion that the value of professional services rendered constitutes a deductible advertisement expense.

In light of the forgoing, we hold that the value of the telephone services rendered by petitioner was not an expense that was "paid or incurred" during any of the years in issue and is not deductible under section 162. Therefore, we sustain respondent's determination that petitioners are not allowed a deduction for the value of the time Dr. Remy spent giving free telephone services to his patients.

## Validity of Notice of Deficiency

Petitioners also argue that the Court should disallow the subject tax deficiencies on the ground that the revenue agent's report, upon which the notice of deficiency is based, contains "gross errors of fact". In support of this argument, petitioners cite Bruce & Human Drug Co.

v. Commissioner, 1 B.T.A. 342 (1925), a case involving income and profits taxes for the years 1918 to 1920. In that case, the Board of Tax Appeals found that the Commissioner's revenue agent had not properly computed the taxpayer's net income.  The Board noted that the revenue agent had arrived at the taxpayer's net income "by adding certain alleged omissions of income to the net income returned by the taxpayer on his original return, without a verification of the entire net income, either by an examination of all the income and expenses, or by a proof of the opening and closing balance sheets."  Id. at 346. At the same time, the Board found that the taxpayer's proof, consisting principally of an "audit" of the taxpayer's books by an independent certified public accountant, could not prove the correctness of the taxpayer's net income.  Nevertheless, the Board found "from the entire record that the proposed deficiency [was] not well founded" and  "disallowed" the deficiency.  Id.

Petitioners' argument focuses on alleged "gross errors of fact contained in the original revenue examiner's report", and petitioners ask the Court "to disallow the Commissioner's contention that a deficiency existed in the first place".  In particular, petitioners assert that "the revenue examiner was unable to cite any statute which would

serve to prohibit or disallow the petitioner's claimed deduction for goodwill advertising".

They also assert that the agent's report relies on a case, Van Iderstine Co. v. Commissioner, T.C. Memo. 1957-177, revd. 261 F.2d 211 (2d Cir. 1958), which does not apply here and was not relied on by respondent at trial. Finally, they assert that the revenue agent's report "incorrectly stated that 'no income has ever been reported for the claimed deduction' when, in fact, the majority of the petitioner's income was in the form of professional fees received within the same business context as the advertising expenditures claimed by the petitioner."

We reject petitioners' argument on the basis of the well-established rule that the Court will not look behind a notice of deficiency to review the Commissioner's administrative consideration of a case. E.g., Greenberg's Express, Inc. v. Commissioner, 62 T.C. 324, 327 (1974). The rationale for this rule is that a trial before this Court is a proceeding de novo, and our determination of a taxpayer's tax liability must be based on the merits of the case and not on any previous record developed at the administrative level. Id. at 328.

Furthermore, we disagree with petitioners that the three particulars enumerated in their post-trial brief

demonstrate "gross errors of fact" in the revenue agent's report. The first two particulars, i.e., that the agent failed to cite any statute that would disallow the claimed deduction, and that the agent cited <u>Van Iderstine Co. v. Commissioner</u>, <u>supra</u>, have nothing to do with the facts of the case. The last particular, consisting of the statement in the revenue agent's report that "no income has ever been reported for the claimed deduction", deals with a fact, but one which is true. As mentioned above, we found that petitioners deducted the value of Dr. Remy's professional time in performing telephone services for his patients but did not include that amount in their gross income. Thus, it is clear that no income has ever been reported for the claimed deduction.

## Accuracy-Related Penalty

Respondent determined that petitioners are liable for an accuracy-related penalty under section 6662(a) for each of the years in issue. Section 6662(a) imposes a penalty equal to 20 percent of the portion of the underpayment of tax which is attributable to one or more of five types of errors specified in section 6662(b) including:

> (1) Negligence or disregard of rules or regulations.

(2)   Any substantial understatement of
      income tax.

Respondent determined that the entire underpayment of tax

in 1990 is attributable to negligence or disregard of rules

and regulations.  Respondent further determined that the

entire underpayments of tax in 1991 and 1992 are

attributable to substantial understatements of income tax,

or, alternatively, are due to negligence or disregard of

rules and regulations.

For purposes of section 6662, the term "negligence"

includes any failure to make a reasonable attempt to comply

with the provisions of the tax code, and the term

"disregard" includes any careless, reckless, or intentional

disregard.  Sec. 6662(c).  For purposes of section 6662,

the phrase "substantial understatement of income tax" is

defined by section 6662(d)(1) as follows:

> (A) In general.--For purposes of this sec-
> tion, there is a substantial understatement of
> income tax for any taxable year if the amount of
> the understatement for the taxable year exceeds
> the greater of--
>
> (i) 10 percent of the tax required to
> be shown on the return for the taxable
> year, or
>
> (ii) $5,000.

The amount of an understatement is reduced by the portion thereof attributable to the tax treatment of any item for which there is or was substantial authority, or of any item with respect to which the relevant facts are adequately disclosed in the return or on a statement attached to the return.  Sec. 6662(d)(2)(B).

Petitioners assert that they meet the requirements of section 6664(c), and that no penalty can be imposed under section 6662(a).  Section 6664(c)(1) provides:

> No penalty shall be imposed under this part with respect to any portion of an underpayment if it is shown that there was a reasonable cause for such portion and that the taxpayer acted in good faith with respect to such portion.

The regulations promulgated under section 6664(c)(1) provide as follows:

> The determination of whether a taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account all pertinent facts and circumstances.  The most important factor is the extent of the taxpayer's effort to assess the taxpayer's proper tax liability.  Circumstances that may indicate reasonable cause and good faith include an honest misunderstanding of fact or law that is reasonable in light of the experience, knowledge and education of the taxpayer.  [Sec. 1.6664-4(b)(1), Income Tax Regs.]

Petitioners bear the burden of showing that there was reasonable cause for, and that they acted in good faith with respect to, a portion of an underpayment. Rule 142.

As to the portion of the penalty determined by respondent with respect to the adjustment of petitioners' deduction of advertising expenses, petitioners make the following argument:

> Since the petitioner has demonstrated to the court that he did not engage in careless, reckless, or intentional disregard of any existing statute, and since the respondent has been unable to prove that the petitioner acted in any manner other than in good faith, the petitioner submits that the penalties should not apply.

Based upon Dr. Remy's testimony, it is evident that he attempted to research the tax law to find authority for his position that the amount of his noncompensated telephone services is deductible. It is also evident that he took steps to accurately document the extent of his telephone services by maintaining a log. However, this is not enough to be relieved of the accuracy-related penalty. Section 6664(c)(1) requires "a reasonable cause". In this case, petitioners have not shown that the underpayment attributable to the deductions in question was due to reasonable cause. To the contrary, we cannot find

petitioners' position reasonable in light of the weight of authority against that position.  Cf. <u>United States v. Fitzsimmons</u>, 712 F.2d 1196 (7th Cir. 1983), where a taxpayer's conviction for willfully and knowingly making and subscribing tax returns that he did not believe to be true and correct, in violation of section 7206(1), was predicated on the fact that the taxpayer, a dentist, reduced his gross receipts by the value of certain free services to his patients.  Accordingly, the portion of the penalty attributable to petitioners' deduction of advertising expenses is sustained.

We find that petitioners are liable also for the portion of the penalty determined by respondent with respect to the adjustments conceded by petitioners; i.e., the bad debts and rent expense adjustments.  The burden is on petitioners to prove that a penalty does not apply. <u>Reily v. Commissioner</u>, 53 T.C. 8, 14 (1969).  Petitioners have not met their burden of proof.  They conceded the bad debts and rent expense adjustments prior to the issuance of the notice of deficiency, and they introduced no evidence as to those adjustments at trial.  We have no basis in the record of this case to overturn respondent's determination that petitioners are liable for the penalty under section 6662(a) with respect to the adjustment of petitioners' bad

debts and rent expense deductions.  Accordingly, we hereby sustain respondent's determination of petitioners' liability for the penalty under section 6662(a) on the portion of the underpayment attributable to those adjustments.

In light of the foregoing,

<u>Decision will be entered</u>

<u>for respondent</u>.